**Charles L. ROBINS, Plaintiff–Appellee,**

v.

**B. MEECHAM, C/O, D. Morris, SC/O, G. Cox, C/O, Defendants–Appellants.**

**No. 94–15067.**

United States Court of Appeals, Ninth Circuit.

Submitted April 12, 1995.*

Decided July 27, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Paul G. Yohey, Deputy Atty. Gen., Carson City, NV, for defendants-appellants.

Charles L. Robins, Ely, NV, pro se.

Before: TANG,** SCHROEDER, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Nevada state correctional officers Robert Meecham, Daniel Morris, and Glen Cox appeal the district court's denial of their motion for reconsideration of the district court's order denying their motion for summary judgment. Inmate Charles L. Robins sued the correctional officers for violating his Eighth Amendment rights, pursuant to 42 U.S.C. § 1983. Robins was injured when bird shot

fired by Meecham at another inmate ricocheted under Robins's cell door and allegedly lodged in his foot.

## Background

On December 26, 1991, a breach of prisoner discipline occurred in the condemned men's unit of Ely State Prison when inmate Echavarria refused a direct order to lock up. The incident resulted in Officer Meecham firing a round of bird shot at inmate Echavarria. A few pellets of bird shot came under Robins's cell door and allegedly lodged in his foot. Robins was treated at the prison infirmary.

Robins filed suit against Correctional Officers Meecham, Morris, and Cox for violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983. The officers filed a motion for summary judgment on the grounds that no constitutional violation had been established by Robins, and, therefore, they were entitled to qualified immunity. The district court granted the officers' motion on the First, Fourth, Fifth, Sixth, and Fourteenth Amendments claims. The district court determined, however, that a triable issue of material fact existed as to whether the use of bird shot against Echavarria was necessary to restore order. Robins claimed that Echavarria was attempting to comply with the officers' order to lock up before he was shot. The district court found that Robins raised sufficient allegations of fact to support this theory of the case. Therefore, the district court denied the officers' motion for summary judgment on Robins's claim that he was deprived of his Eighth Amendment rights by being subjected to cruel and unusual punishment.

The officers filed a motion for reconsideration conceding that an issue of material fact existed as to whether inmate Echavarria's Eighth Amendment rights had been violated, but arguing that they were nonetheless entitled to summary judgment on the basis of qualified immunity with respect to the claims of inmate Robins because they intended to use force only against Echavarria. The district court denied the motion.

** Judge Tang concurred in the result, but died before this opinion was filed.

■ The officers appeal the denial of their motion for reconsideration. Although ordinarily the denial of a Rule 56 motion is an interlocutory order from which no appeal is immediately available, " 'a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.' " *Kraus v. County of Pierce*, 793 F.2d 1105, 1107–08 (9th Cir.1986) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). Therefore, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Because the issue of whether the officers are entitled to qualified immunity turns on a question of law, we review the district court's decision de novo. *United States v. Yacoubian*, 24 F.3d 1, 3 (9th Cir.1994).

I

The officers contend that Robins failed to raise sufficient facts to preclude summary judgment for a violation of his Eighth Amendment rights because the force they exerted was directed against another inmate, and that therefore, the injuries to Robins were unintentional. They attempt to characterize the issue as whether the common law doctrine of transferred intent applies to the Eighth Amendment prohibition against cruel and unusual punishment. They argue that the common law concept of transferred intent, which embodies the concept that the actor knows the consequences that are substantially certain to result from his act, does not operate to transfer the mental states of malice and sadism necessary to establish an Eighth Amendment excessive force claim. According to this theory, there must be a deliberate causing of pain flowing directly from the officer to the inmate against whom the officer's actions are directed. A review of the analytical framework developed from the Eighth Amendment's prohibition against cruel and unusual punishment suggests that the officers' attempt to characterize the issue in the instant case as one of transferred intent is misguided.

The officers would like to characterize Eighth Amendment violations as requiring specific intent to punish a specific individual. Their theory is that the Eighth Amendment prohibits cruel and unusual *punishment*, and thus, unless the officer exerting the force intended to punish the inmate suffering the harm, the Eighth Amendment is not implicated. Applying this theory, the only way Robins could establish an Eighth Amendment claim would be to transfer the officers' specific intent to punish Echavarria over to Robins. The officers' theory is contrary to the underlying scope of protection which the Supreme Court has interpreted the Eighth Amendment to encompass.

"After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, *conduct that does not purport to be punishment at all* must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (ellipsis in original) (internal quotations and citations omitted) (emphasis added). This language indicates that the Eighth Amendment goes further than to simply protect inmates from actions taken with an intent to punish; it serves to protect the interests and safety of inmates. This position is reinforced by the Supreme Court's belief that in the context of the prison system, the Cruel and Unusual Punishments Clause affords inmates protection which is at least coextensive with that of the Due Process Clause of the Fourteenth Amendment, a clause which protects the liberty of citizens. *Id.* at 327, 106 S.Ct. at 1088.

■ The framework developed by the Supreme Court for analyzing Eighth Amendment claims provides further support for the proposition that the Eighth Amendment does not require a specific intent to punish a specific individual. The basic threshold of the Eighth Amendment is that the offending conduct must be wanton. *Wilson v. Seiter*, 501 U.S. 294, 302, 111 S.Ct. 2321, 2326, 115

L.Ed.2d 271 (1991). Wantonness does not have a fixed meaning, but rather, must be determined in relation to the type of conduct on which the suit is based. *Id.* Where a prison security measure is undertaken to resolve a disturbance, the test is whether force was applied *"maliciously and sadistically for the very purpose of causing harm." Id.* (internal quotations omitted) (emphasis added). Where the challenge relates to prison conditions the test is whether the prison officials acted with *"deliberate indifference." Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1973, 128 L.Ed.2d 811 (1994). Although both these tests require a higher showing than mere negligence, *Wilson,* 501 U.S. at 305, 111 S.Ct. at 2327–28, the Supreme Court has never indicated that these tests require a *specific* intent to harm or punish a *specific* individual. In *Wilson,* the Court did not address the issue of whether the specific intent to punish needed to be directed at a specific individual. Rather, *Wilson* simply answers the question of whether the Eighth Amendment contains an intent requirement at all:

> The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment ... some mental element must be attributed to the inflicting officer before it can qualify. As Judge Posner has observed:
>
>> "The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century.... [I]f [a] guard accidentally stepped on [a] prisoner's toe and broke it, this would not be punishment in anything remotely like the accepted meaning of the word, whether we consult the usage of 1791, 1868, or 1985."

*Wilson,* 501 U.S. at 300, 111 S.Ct. at 2325 (alterations in original) (quoting *Duckworth v. Franzen,* 780 F.2d 645, 652 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)).

The key issue in this case, however, is not whether the officers had an intent to harm or punish, but rather, whether it matters if that intent was directed at inmate Echavarria instead of inmate Robins. The difference between the Judge Posner example cited in *Wilson* and the case here is that in Posner's example, the guard had no specific intent whatsoever to harm or punish. The guard accidentally stepped on a prisoner's toe. Here, the officers had a specific intent to harm or punish—they simply directed it at Echavarria rather than at Robins. Thus, *Wilson's* requirement of an intent to punish is satisfied.

■ Both the underlying purposes of the Eighth Amendment and Supreme Court precedent suggest that an intent to punish is enough to establish a cause of action—the Eighth Amendment does not require a further showing that the intent to punish needs to be directed at a specific individual. As we have previously stated, the Eighth Amendment serves to protect the interests and safety of inmates—all inmates. But that is only one side of the coin. The Bill of Rights in general, and the Eighth Amendment here, also serves as a restraint on governmental overreaching. In *Farmer v. Brennan,* the Supreme Court noted that "the Eighth Amendment places restraints on prison officials." —— U.S. at ——, 114 S.Ct. at 1976. We advance this purpose of the Eighth Amendment by holding prison officials liable so long as they have a specific intent to harm. Whom the prison officials shot, Robins or Echavarria, is not relevant—what is relevant is that they fired a shotgun blast at an inmate. It is this conduct that the Eighth Amendment is designed to restrain.

The Supreme Court, in considering a challenge to prison conditions, stated:

> [A] prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.... If, for example, prison officials were aware that inmate rape was so common and uncontrolled that some potential victims dared not sleep [but] instead ... would leave their beds and spend the night

clinging to the bars nearest the guards' station, it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom. *Cf.* ... *Commonwealth v. Welansky,* 316 Mass. 383, 55 N.E.2d 902 (1944) (affirming conviction for manslaughter under a law requiring reckless or wanton conduct of a nightclub owner who failed to protect patrons from a fire, even though the owner did not know in advance who would light the match that ignited the fire or which patrons would lose their lives); *State v. Julius,* 185 W.Va. 422, 431–432, 408 S.E.2d 1, 10–11 (1991) (holding that a defendant may be held criminally liable for injury to an unanticipated victim).

*Farmer,* —— U.S. at ——, 114 S.Ct. at 1982 (internal quotations and citations omitted). Although the Supreme Court was writing in the context of the deliberate indifference standard, it did not indicate that by raising the mental state to malicious and sadistic, the element of specific intent vis-a-vis a specific person should be added.

In an Eighth Amendment challenge to the beating of a pretrial detainee, Judge Aldisert, writing for the Third Circuit, stated:

> Nor was it necessary, to bring this claim within the locutions of the Eighth Amendment, for plaintiff to prove that the actors intended to "punish" him. Although that Amendment proscribes the infliction of cruel and unusual "punishment," clearly it was their conduct which pierced the constitutional shield, not their motive. All that is required is proof that the conduct was intentional. There is no requirement of proof of a further objective toward which the conduct is directed. "While a specific intent to deprive a person of his constitutional rights is required under criminal sections of the Civil Rights Acts, ... neither specific intent nor purpose to deprive an individual of his civil rights is a prerequisite to civil liability under the civil provisions of the Civil Rights Act."

*Howell v. Cataldi,* 464 F.2d 272, 281 (3rd Cir.1972) (alteration in original) (quoting *Basista v. Weir,* 340 F.2d 74, 81 (3rd Cir.1965)).

In an attempt to invoke the doctrine of specific intent, the officers misstate the stan-

dard for determining wantonness, arguing "the standard of wantonness that inmate Robins must establish in his use of force claim ... is that defendants acted *towards him* maliciously and sadistically for the purpose of causing *him* harm." This subtle but critical misstatement of the appropriate standard would require that the defendants act with specific intent rather than with general intent. The correctly-stated standard, however, is whether the defendants applied force "maliciously and sadistically for the very purpose of causing harm,"—that is *any* harm. *See Farmer,* —— U.S. at ——, 114 S.Ct. at 1978; *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *Wilson,* 501 U.S. at 302, 111 S.Ct. at 2326; *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85. Therefore, the officers' argument that they could not have violated Robins's Eighth Amendment rights because the bird shot "did not come under inmate Robins' door with the intent to punish, i.e. with maliciousness and sadisticness [sic]" is without merit.

■ There is no dispute that Officer Meecham intentionally fired the shotgun at inmate Echavarria. The district court correctly determined that inmate Robins presented sufficient evidence to create a triable issue of material fact as to whether Officer Meecham fired the shotgun loaded with bird shot "in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999. In their motion for reconsideration, the officers conceded that Robins raised an issue of material fact concerning whether excessive force was used on inmate Echavarria. Therefore, the officers are not entitled to qualified immunity. The district court correctly denied the officers' motion for summary judgment.

## II

■ The officers contend that even if this Court finds that inmate Robins can establish an Eighth Amendment claim against them, they should still be entitled to qualified immunity because the doctrine of transferred

intent has never been applied to the Eighth Amendment.

The district court properly determined that if Robins could prove the facts he was alleging, he could establish an Eighth Amendment claim against the officers. In light of our discussion in Section I, the district court did not need to "implicitly" rely on the doctrine of transferred intent. This situation presents no new principles of which the officers could not have reasonably been aware regarding the constraints which the Eighth Amendment places on the actions of prison officials. The right of Robins to be free from harm caused by the malicious and sadistic actions of the correctional officers was clearly established at law.

### III

Noting that only Officer Meecham fired at Echavarria, Officers Cox and Morris argue that they should have been granted summary judgment because Robins failed to allege sufficient facts that they took any action against either Echavarria or Robins. Their contention is not supported by the record.

The following facts are not in dispute: 1) it was Senior Correctional Officer Morris who initially ordered inmate Echavarria to lock up; 2) Officers Cox, Morris, and Meecham were together in the control bubble on Unit 3; 3) Officer Meecham fired the shotgun at inmate Echavarria.

 Although it is true that there are no allegations that Officers Cox and Morris took any action against any inmates, it is also true that a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene. *See Del Raine v. Williford,* 32 F.3d 1024, 1038 (7th Cir.1994) ("A failure of prison officials to act in such circumstances suggests that the officials actually wanted the prisoner to suffer the harm."); *Buckner v. Hollins,* 983 F.2d 119, 123 (8th Cir.1993) ("Veltrop's failure to intervene in order to stop Buckner's beating ... would provide an ample basis for a jury to conclude that Veltrop ... violated Buckner's Eighth Amendment rights."). Robins specifically relies on this theory of recovery in his claim against Cox and Morris.

 In none of the affidavits submitted with the officers' motion for summary judgment do any of the officers state they did not have the opportunity to intervene to prevent Officer Meecham from firing the gun. On the other hand, the affidavits of the officers and Robins indicate that all three officers were together in the control bubble. The officers failed to carry their burden of showing that Officers Morris and Cox could not have prevented Officer Meecham from firing the shotgun, or much less that they even disagreed with Officer Meecham's actions. Therefore, the district court did not err in denying the motion for summary judgment as to Officers Cox and Morris.

The district court's denial of the officers' motion for summary judgment and subsequent motion for reconsideration is

AFFIRMED.