Terrance COVINGTON, Plaintiff—
Appellee,

v.

J.W. FAIRMAN, Jr.; A. Quinones; A. Valenzuela; S. Pina; C. Tostado; R. Chappell, Defendants,

**and**

J.M. Mattingly; L.R. Lopez; G. Zinani; V. Brown; W. Haskins; A. Ballesteros; M. Barrier; C. Davis, Defendants—Appellants.

Terrance Covington, Plaintiff—
Appellee,

v.

J.W. Fairman, Jr.; J.M. Mattingly; S. Pina; L.R. Lopez; G. Zinani; V. Brown; W. Haskins; A. Ballesteros; C. Tostado; M. Barrier; C. Davis; R. Chappell, Defendants,

**and**

A. Quinones; A. Valenzuela, Defendants—Appellants.

Nos. 03–17003, 03–17004.

D.C. No. CV–99–06133–REC/TAG.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 2004.

Decided Dec. 9, 2004.

Terrance Covington, Calipatria, CA, pro se.

Barbara N. Sutliffe, San Francisco, CA, Michael A. Bishop, Matheny Sears Linkert & Long, LLP, Sacramento, CA, for Defendants and Defendants–Appellants.

Before HALL, BRUNETTI, and GRABER, Circuit Judges.

### MEMORANDUM *

Correctional officers and their supervisors appeal from the district court's order denying them summary judgment on grounds of qualified immunity in Plaintiff Terrance Covington's action under 42 U.S.C. § 1983. Plaintiff alleged that the officers used excessive force, in violation of the Eighth Amendment, during a "cell extraction" and that the supervisors witnessed that violation but failed to stop it.

### 1. Saucier *Step One*

 Considering all the materials submitted in support of, and in opposition to, summary judgment and resolving all factual disputes in Plaintiff's favor, we conclude that Plaintiff's Eighth Amendment rights were violated. *See Jeffers v. Gomez,* 267 F.3d 895, 909 (9th Cir.2001) (per curiam) (describing the first step of the qualified immunity test in *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)); *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (setting forth the standard for evaluating whether a prison security measure involved excessive force in violation of the Eighth Amendment).

In his verified complaint, which we may treat as an opposing affidavit, *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987) (per curiam), Plaintiff alleged that Defendants Lopez, Haskins, Ballesteros, Barrier, and Davis—all of whom were members of the cell extraction team—hit him in the "body and head" and that Defendant Zinani hit him in the "body and head and penis area." In his deposition, he testified that, when the officers entered the cell: "[T]hey was just hittin' me. Hittin' me in my groin, hittin' me in [my] face,

hittin' me in my body." He also testified that later, after he was on the ground, the officers continued to hit him, knee him, and step on him. While he was on the ground, Defendant Brown "started to twist my foot until it was almost broken." As alleged by Plaintiff, the beating was out of proportion to the officers' legitimate need to end the nonviolent "boarding up" incident and out of proportion to Plaintiff's resistance. If Plaintiff's version of events is believed, the incident amounted to a wanton beating in violation of the Eighth Amendment, even though it did not result in serious, lasting injury. *See Hudson,* 503 U.S. at 7 (stating that it is proper to consider factors such as "the need for application of force, the relationship between the need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' [ ] 'any efforts made to temper the severity of the forceful response,'" and the extent of injury, but holding that serious injury is not required (quoting *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986))); *Whitley,* 475 U.S. at 320 (stating that the infliction of "unnecessary and wanton pain" violates the Eighth Amendment).

Plaintiff's claims against Defendants Mattingly, Quiñones, and Valenzuela proceed on a theory of supervisory liability. A supervisor is liable under § 1983 if there exists "'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers,* 267 F.3d at 915 (quoting *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir.1991)). Specifically, "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" to prevent a constitutional violation. *Robins*

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

*v. Meecham,* 60 F.3d 1436, 1442 (9th Cir. 1995).

In his complaint, Plaintiff alleged that Defendants Mattingly, Quiñones, and Valenzuela "witness[ed] this brutal beat[ing] but failed to act to stop it." Furthermore, there is some evidence that Valenzuela knew that certain other defendants should not have participated in the cell extraction. In the light of our conclusion that the alleged beating described above violated the Eighth Amendment (and also in consideration of the evidence of beating by additional defendants who either did not seek qualified immunity or did not appeal its denial), the allegations that the supervisors failed to act establishes supervisory liability under § 1983.

### 2. Saucier *Step Two*

█ It would have been "'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Clement v. Gomez,* 298 F.3d 898, 906 (9th Cir.2002) (quoting *Saucier,* 533 U.S. at 202). Even if Defendants had a "'mistaken understanding as to whether a particular amount of force [was] legal'" in the circumstances, *Jeffers,* 267 F.3d at 909 (quoting *Saucier,* 533 U.S. at 205), their mistake would have been unreasonable.

In September 1998, it was clearly established that inmates were protected from wanton beatings that exceeded correctional officers' good-faith efforts to address a violation of prison rules. *See Martinez v. Stanford,* 323 F.3d 1178, 1180, 1184 (9th Cir.2003) (holding that, because the law regarding excessive force was clearly established in 1994, that qualified immunity was improperly granted to officers who allegedly beat an inmate during a cell extraction, despite the inmate's lack of resistance); *McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir.1986) (holding that the Eighth Amendment was violated by an assault while an inmate was not resisting).

Moreover, it was clearly established that significant injury is not required to make out an Eighth Amendment violation. *See Hudson,* 503 U.S. at 7 (stating that "[t]he absence of serious injury is … relevant to the Eighth Amendment inquiry, but does not end it"). It was also clearly established that supervisors could be liable for failing to stop constitutional violations. *Robins,* 60 F.3d at 1442.

### 3. Internal Investigative Reports

█ Defendants' assertion that the redacted investigative reports should not be considered must fail. Insofar as Defendants raise a claim of error by the district court in granting the motion to compel or in accepting and relying on the materials, their claim was not stated in the opening briefs and therefore need not be considered. Insofar as Defendants claim that we can review only what is in the parties' *excerpts* of record, as distinct from the entire actual record, they are simply mistaken; the whole record is before us on de novo review. *See Johnson v. County of Los Angeles,* 340 F.3d 787, 791 (9th Cir. 2003) (reviewing de novo the denial of a motion for summary judgment based on qualified immunity).

AFFIRMED.

BRUNETTI, Circuit Judge, dissenting.

I agree with the majority that the panel can consider the redacted investigative reports. I disagree with the majority's conclusion that Defendants are not entitled to qualified immunity.

Initially, it is important to point out who is *not* involved in this appeal. This appeal does not involve Officer Piña, who punched Covington in the right eye as he lay on the ground, causing a cut to the eye. Nor does this appeal involve Officer Tostado, who jumped on Covington as he lay on a gurney and punched him four to five times

in the stomach. Neither of these incidents can be attributed to the officers who are a part of this appeal. This appeal involves two sets of defendants: Officers Lopez, Zinani, Brown, Haskins, Ballestreros, Barrier, and Davis ("the extraction officers") and Cpt. Mattingly, Lt. Quiñones, and Sgt. Valenzuela ("the supervisors"). Because under the framework of *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), I believe all Defendants *in this appeal* are entitled to qualified immunity, I respectfully dissent.

### FACTS

While I agree that Covington's version of the facts must be taken as true, that does not mean that all other facts are not considered. It is important to note the facts leading up to the extraction in order to get a complete picture of the situation confronting the extraction officers as they entered Covington's cell.

An incident occurring the morning of September 2, 1998 is an important beginning to the eventual evening extraction. That morning, as Covington was led out of his cell in handcuffs, his cellmate got into a physical altercation with Sgt. Valenzuela inside the cell. Covington attempted to reenter the cell, and he refused orders to get down to the ground. He was forcibly taken down to the ground and placed in leg restraints. Covington states that he told Valenzuela's supervisor, Lt. Quiñones, that he wanted to speak with higher-ranking officials about this incident. Lt. Quiñones did not notify any of his supervisors.

Covington admits that in response to the morning incident, he and his cellmate decided to stage a protest. They placed white paper over the cell window so the prison officials could not see inside. This was in violation of prison regulations, and it prevented the officials from conducting mandatory head counts of the inmates. Covington admits that he knew this was against prison regulations and that it disrupted the head count. Nineteen other inmates in ten other cells also covered their windows.

Covington and his cellmate were asked repeatedly to remove the paper and to exit the cell. They refused to remove the paper from the cell window. Lt. Quiñones then ordered Covington to cuff up, and he received no response. Pepper spray was then dispensed into the cell. After pepper spraying the cell, Covington still refused to exit the cell and instead a mattress was placed over the door. Lt. Quiñones again ordered the two inmates to cuff up and come out, and again there was no response. Covington admits that he received several warnings to come out of the cell.

It was against this backdrop that the cell extraction took place. The extraction officers entered the cell around 6:51 p.m. They were wearing protective gear, including helmets with face shields and towels around their faces. Covington states that the officers pinned him in a corner. He admits that he resisted being handcuffed freely. At this time, as the majority points out, Covington alleges that certain extraction officers hit him in the "body and head" and that Defendant Zinani hit him in the "body and head and penis area." Further, as the majority points out, Covington alleges that "[t]hey was just hittin' me. Hittin' me in my groin, hittin' me in [my] face, hittin' me in my body."

Covington soon went down to the ground on his back, with his head out of the cell. By 6:52 p.m., he was in handcuffs. Covington states that because someone was standing on the handcuffs, he tried to use his arms to get that person off of his wrists. Also while on the ground, as the majority also points out, Covington alleges that Defendant Brown "started to twist my foot until it was almost broken."

He was eventually placed in leg restraints and then strapped to a gurney. By 6:56 p.m., he had been taken to the showers. The injuries Covington suffered were stomach pain for one week, a "busted" right eye, a small scar/mark on his right eye, swollen wrists, and emotional distress. Covington eventually admitted that in this situation some force was justified.

## ANALYSIS

### 1. Saucier *Step One*

The first step in a qualified immunity analysis is to determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. I agree that in the prison context, a prison official's unnecessary and wanton infliction of pain constitutes an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). As the Supreme Court has indicated, however, whether the force applied was unnecessary and wanton turns on "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." *Hudson*, 503 U.S. at 7; *see also Whitley*, 475 U.S. at 320–21. In determining whether the force was applied for a legitimate purpose or for simply causing harm, the court considers the need for the application of the force, the relationship between the need and the amount of force that was used, the threat reasonably perceived by the officials, any efforts to temper the severity of a forceful response, and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. While significant injury is not required to make out an excessive force claim, the absence of serious injury is relevant to the inquiry and a *de minimis*

use of physical force does not violate the Eighth Amendment. *Hudson*, 503 U.S. at 7, 9–10.

As to this first step in the *Saucier* analysis, I believe the facts show that the use of force by the extraction officers was applied in a good faith effort to restore discipline, and was not applied maliciously or sadistically to cause harm.

The situation presented a need for the application of force. Both the magistrate judge and Covington himself admit that some force was justified. Covington had placed paper over his cell window, which prevented the prison officials from performing a mandatory head count. After being warned several times to remove the paper and leave the cell, he refused. Even after pepper spray was dispensed into the cell, rather than exiting the cell, a mattress was placed over the door. Because Covington was not going to leave the cell on his own, some force would have to be used to remove him.

The amount of force used was in proportion to the need for force, and this is evidenced by the minor extent of the injuries received. When the extraction officers entered the cell to handcuff and remove him, Covington admits that he would not be handcuffed freely. In trying to restrain Covington in order to place him in handcuffs, the extraction officers did not use weapons, such as guns or tasers, or even pepper spray once inside the cell. There is no allegation that even batons were used. Instead, the extraction officers' own hands and legs were used to subdue Covington. While lack of significant injuries is not dispositive, Covington's minor injuries lead to a strong inference that the force used was not excessive. Even accepting Covington's allegations as true as to the hitting and kicking, after this encounter, Covington's only injuries were a "busted" right eye and a small scar/mark on his right eye (both presum-

ably caused by Officer Pina, not a party to the appeal), stomach pain for a week and swollen wrists. While we assume as true that Officer Brown did twist his leg, there are no injuries to his leg or ankle. Further, as Covington was moving his handcuffed arms around (in an attempt to get a person off of his wrist), Officer Brown was justified in trying to place leg restraints on Covington in furtherance of subduing him.

The threat reasonably perceived by the officials also justifies the use of force under these circumstances. The prior morning incident, coupled with the refusal to leave the cell, demonstrates that it was reasonable that Covington would not leave the cell peacefully.

Finally, many non-violent efforts were made to temper the need to use force. Covington was given ample opportunities to leave the cell on his own. Even after being pepper sprayed, he still refused to leave. Instead, he chose to barricade himself in the cell, necessitating an extraction team to go into the cell, under hostile conditions, and forcibly remove him.

These factors weigh heavily in favor of the conclusion that the force applied was done in a good faith effort to restore discipline. The situation presented the need to use force, and the force applied was not done so maliciously or sadistically. As demonstrated by the lack of serious injuries, the force used was in fact relatively minor. I would find that the extraction officers use of force was not a wanton infliction of pain, and therefore there was no Eighth Amendment violation. *See Whitley*, 475 U.S. at 322 ("Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain ..., the case should not go to the jury.").

Covington proceeded on a theory of supervisory liability against the three supervising officers. Under the facts of this case, the supervisors can only be liable if there was an underlying constitutional violation by the extraction officers. *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001)(per curiam). Because I do not believe that the extraction officers used excessive force in violation of Covington's Eighth Amendment rights, the supervisors therefore cannot be held liable.

## 2. Saucier *Step Two*

Even if I assume that under the facts of this case all Defendants engaged in conduct that violated Covington's Eighth Amendment rights, all Defendants would still be entitled to qualified immunity under the second step of *Saucier*. "[I]f a [constitutional] violation could be made out on a favorable view of the parties's submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. The Supreme Court has stated that "it is vital to note" that this second step "must be undertaken *in light of the specific context of the case, not as a broad general proposition.*" *Id.* (emphasis added). Indeed, the Supreme Court stated that the test for "determining whether a right is clearly established is whether it would be clear to a *reasonable* officer that his conduct was unlawful *in the situation he confronted.*" *Id.* at 202 (emphasis added). This means that under the second *Saucier* step, an official is still entitled to qualified immunity if the official has a " 'mistaken understanding as to whether a particular amount of force is legal in those circumstances' " so long as the mistake is reasonable. *Jeffers*, 267 F.3d at 909 (quoting *Saucier*, 533 U.S. at 205).

I do not dispute that as of September 2, 1998, it was clearly established that a wanton beating by a prison official amounted to a violation of a prisoner's Eighth Amendment rights. However, under this step, the inquiry is whether it was clearly established that the force applied during a cell extraction under these circumstances

would have been known by a reasonable officer to be wanton and unnecessary.

While it was clearly established in September 1998 that prisoners were entitled to be free from wanton beatings, it was equally clearly established in September 1998 that at times prison officials may have to apply force to prisoners in order to restore or maintain discipline. *See Hudson*, 503 U.S. at 6–7; *Whitley*, 475 U.S. at 320–21. It was certainly not clearly established at this time that kicking and punching during a cell extraction, especially when the use of force was necessary, would be characterized as a wanton beating and an Eighth Amendment violation. Under the circumstances detailed above, a reasonable officer would have believed that force was necessary and lawful to extract Covington from his cell. A reasonable officer would also suspect that this force might include punching and kicking. Importantly, the extraction officers did not use weapons such as tasers or guns to subdue Covington. Further evidence that the force applied was reasonable under the circumstances is that the injuries resulting from these punches and kicks were very minor. Under the *Hudson* and *Whitley* parameters, which allow prison officials certain leeway in order to maintain prison discipline, I cannot conclude that the extraction officers acted unreasonably and beyond those parameters.

The majority relies on Covington's allegations that he was repeatedly hit in his groin to bolster the conclusion that the force applied was excessive. However, neither the Supreme Court nor this court have ever held that a prison official's punching or kicking in the groin is a per se Eighth Amendment violation. Indeed, this conduct must be considered in light of the entire factual context. The groin allegations occurred in the heat of a cell extraction, with punches and kicks inevitably flying. The panel may decide today that that type of force should never be allowed. However, we have yet to reach such a conclusion. Because the officers were not put on notice that any physical force applied to the groin would be considered per se excessive force, the officers were reasonable in their actions. *See Saucier*, 533 U.S. at 202 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").

Regarding the supervisors, it was clearly established by September 1998 that supervisors may be liable for failing to stop constitutional violations. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). However, the supervisors faced the same dilemma as the extraction officers: some force was required to extract Covington. Given the type and amount of force that the extraction officers were using, the supervisors acted reasonably in not taking any action. Indeed, when Officer Tostado (not a party to this appeal) jumped on top of Covington, Sgt. Valenzuela pulled Tostado off of him. If anything, the supervisors acted to prevent any potential excessive force from being used.

Even if I were to agree that some of the minimal force used in this cell extraction was unnecessary, the conduct of the extraction officers and the supervisors demonstrates that they acted in good faith and any mistake made by the officers as to the amount of force necessary was reasonable, in light of all of the circumstances. By the time the extraction officers entered the cell, events had escalated such that it was probable that force would be used to remove Covington from the cell. Force was in fact used, but Covington's injuries suggest it was minimal and did not exceed the amount that was necessary. If there was some punching or kicking that could conceivably be considered excessive, this conduct would be a reasonable mistake made in the furtherance of restoring discipline

and was not done to maliciously harm Covington.

Because I would hold that all Defendants in this appeal are entitled to qualified immunity, I respectfully dissent.