NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 29 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SENARBLE CAMPBELL,<br><br>      Plaintiff - Appellee,<br><br> v.<br><br>C. HERRERA; FREDERICK MARTIN; NANCIE KENTON; JORGE BECERRA,<br><br>      Defendants - Appellants,<br><br>and<br><br>JOSHUA J. TANTON, GLENN P. ELLIN, L. SPANGLER, J. LEECH, TRAVIS STANFIELD, SHAWN MANSON, J. MORTON, E. SHINNETTE, E. RODRIGUEZ, WILLIAM HALLORAN, RYAN LARGENT, RUBEN J. VALENCIA, MIKE V. HAMMER, C. PIERCE, PETYO S. RASHEV,<br><br>      Defendants. | No. 24-3296<br><br>D.C. No.<br>2:18-cv-00671-CKD<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Carolyn K. Delaney, Magistrate Judge, Presiding

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted March 6, 2025
San Francisco, California

Before: WARDLAW, PAEZ, and LEE, Circuit Judges.
Partial Dissent by Judge LEE.

Defendants, employees and contractors with the California Department of Corrections and Rehabilitation (CDCR), provided in-custody mental health treatment to Plaintiff, Senarble Campbell, in various professional capacities from June to October 2015. Campbell seeks damages under 42 U.S.C. § 1983, alleging that each defendant violated the Eighth Amendment by acting with deliberate indifference to his serious medical need. Defendants appeal the district court's denial of qualified immunity. We affirm and remand for trial.

We have jurisdiction over this interlocutory appeal from a denial of qualified immunity under the collateral order doctrine. *Andrews v. City of Henderson*, 35 F.4th 710, 715 (9th Cir. 2022) (citing 28 U.S.C. § 1291). We review de novo. *Id*. "Summary judgment is appropriate when, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to judgment as a matter of law." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020).

1. The first step in determining whether a government official is qualifiedly immune from liability for civil damages is "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200

(2001). "Prison officials violate the Eighth Amendment if they are deliberately indifferent to a prisoner's serious medical needs." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (cleaned up) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A prison official is deliberately indifferent to [a serious medical] need if he knows of and disregards an excessive risk to inmate health." *Id*. at 1082 (cleaned up) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Defendants do not dispute that Campbell's heightened suicide risk was a serious medical need. *Accord Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), and *opinion reinstated*, 658 F.3d 897 (9th Cir. 2011). Therefore, we need only determine whether there is a genuine issue of material fact that each defendant responded to that need with deliberate indifference, shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need," causing harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). More than negligence, Campbell "must show that the course of treatment [the mental health professionals] chose was medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to [his] health." *Snow v. McDaniel*, 681 F.3d 978, 987-88 (9th Cir. 2012), *overruled on other grounds by Peralta*, 744 F.3d at 1083.

We begin with Defendant Jorge Becerra, Campbell's primary clinician. Dr. Celosse's expert opinion would permit a reasonable jury to conclude that the care Becerra provided was medically unacceptable. *See id.* at 987-89. Becerra's own treatment notes indicate that he was aware of mounting indicators that Campbell was at a heightened suicide risk, yet at every opportunity pressed on with treatment targeting a low acute risk. Further, Dr. Celosse's report identified several medically inappropriate notations in Becerra's notes from which a reasonable jury could infer that Becerra acted out of personal dislike for Campbell, not unbiased clinical judgment. *See id.* at 990 ("[A]ny delay in treatment that was potentially motivated by animus creates a material issue of fact for the jury."). Moreover, in Dr. Celosse's opinion, Becerra repeatedly violated CDCR policy in treating Campbell, which would allow a reasonable jury to infer that Becerra acted with conscious disregard for the purpose of those policies: to identify at-risk inmates and protect them from self-harm. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1079 (9th Cir. 2013).

There is also a genuine issue of material fact whether Defendants Frederick Martin and Nancie Kenton, contract psychologists who each conducted one triage assessment of Campbell, acted with deliberate indifference. A single decision by a mental health professional to discontinue suicide precautions despite a known risk can establish deliberate indifference. *See Clouthier v. County of Contra Costa*, 591

4                                                      24-3296

F.3d 1232, 1244-45 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). And resolving all factual disputes in Campbell's favor, Martin and Kenton both knew Campbell remained suicidal during the triage interviews after having attempted hours before, yet each evaluated him as at a low acute risk of suicide and rescinded his Mental Health Crisis Bed (MHCB) placement. Informed by Dr. Celosse's expert opinion, a reasonable jury could conclude that Martin and Kenton each knew that discontinuing suicide precautions would expose Campbell to a risk of further self-harm, but did so anyway. *See id.* at 1245; *Conn*, 591 F.3d at 1096.

Finally, taking the facts in the light most favorable to Campbell, we cannot say that no reasonable jury could find that Defendant C. Herrera, a psychiatric technician responsible for dispensing Campbell's medication, was deliberately indifferent. There is a genuine issue of material fact whether Herrera knew Campbell was suicidal because Campbell told him so, and consciously disregarded that risk by not reporting or documenting Campbell's statement. *See Conn*, 591 F.3d at 1096-97. The parties dispute whether Herrera was the only person positioned to report Campbell's expression of suicidality and medication refusals upward, and if CDCR policy required him to do so, but we must leave it to the jury to weigh the conflicting evidence. *See id.* at 1096; *Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989).

2. Because the facts viewed in the light most favorable to Campbell show that a reasonable jury could find that Becerra, Martin, Kenton, and Herrera violated the Eighth Amendment, we must decide whether the right allegedly violated was "clearly established" at the time of their acts and omissions. *Saucier*, 533 U.S. at 201. "Law is clearly established for the purposes of qualified immunity if every reasonable official would have understood that what he is doing violates the right at issue." *Wilk*, 956 F.3d at 1148 (cleaned up). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. At this step, we must focus on the objective aspects of deliberate indifference and ask whether it would be clear to a reasonable official at the time "when the risk of harm . . . changes from being *a* risk of *some* harm to a *substantial* risk *of serious* harm." *Est. of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-51 (9th Cir. 2002).

We hold that, on this record, any reasonable prison medical professional in 2015 would have known that Campbell was at such a substantial risk of self-harm that the level of mental health care provided to him was medically unacceptable under the circumstances. The right at issue was clearly established in 2015 under *Clouthier* and *Conn*, both of which denied qualified immunity in the specific context of this case in 2010. 591 F.3d at 1245; 591 F.3d at 1102.

We begin with Becerra, Martin, and Kenton.[1]  The facts show that, like the defendant mental health professional in *Clouthier*, the defendant clinicians here knew that Campbell was actively suicidal, had made multiple past suicide attempts, and was at a serious risk of attempting again absent certain precautions, but consciously disregarded that risk by providing him a medically unacceptable level of mental health care.  *See* 591 F.3d at 1244-45.  Dr. Celosse's report shows that Campbell manifested objective indicators of acute suicidality, and that those signs were either obvious to any mental health professional or actually observed by Defendants.[2]  *See id.*

As to Herrera, it was clearly established in 2015 that his alleged failure to report Campbell's statement of suicidality to medical or custody staff was unlawful.  In *Conn*, the facts constituted an Eighth Amendment violation where two police officers witnessed a detainee threaten to kill herself but—despite their subjective awareness of her suicide risk—did not notify jail personnel when

---

[1]     Because we affirm the district court's denial of qualified immunity to Martin and Kenton, we do not address whether they are categorically barred from qualified immunity as privately employed psychologists working as independent contractors with CDCR.  *See Jensen v. Lane County*, 222 F.3d 570, 573, 580 (9th Cir. 2000).

[2]     While the dissent argues that our cases did not put Martin and Kenton on notice that Campbell was at a *substantial* risk of *serious* harm, this ignores Dr. Celosse's unrefuted opinion that Campbell was at an acute (substantial) risk of suicide (serious harm), as well as the evidence supporting the inference that Martin and Kenton were aware of that substantial risk of serious harm.  *See Est. of Ford*, 301 F.3d at 1051.

transferring the woman to the jail's custody. 591 F.3d at 1096-98, 1102. On the record before us, *Conn* put Herrera on notice of his constitutional duty to report.[3]

Defendants argue that the law in 2015 clearly established only that it is unconstitutional to *remove* suicide prevention measures in the face of a known risk. But this argument fails under *Conn*, which clearly established an affirmative duty to act to prevent suicide in this context.[4] 591 F.3d at 1102.

Defendants' contention that they are entitled to immunity because they relied on their medical judgment and provided ongoing treatment is also unavailing. The defendant mental health specialist who discontinued suicide watch in *Clouthier* exercised her "clinical judgment" that Mr. Clouthier "was improving, would benefit from having normal jail clothes and bedding and could be further evaluated by mental health staff the following day," but her conduct nonetheless showed deliberate indifference because she consciously disregarded her own awareness that Mr. Clouthier remained at risk. 591 F.3d at 1238, 1245.

---

[3] We acknowledge Herrera's limited role in Campbell's medical treatment and note that the district court should reconsider Herrera's entitlement to immunity if the facts developed so warrant. Particularly, it may become necessary to reevaluate whether *Conn* put Herrera on notice of when Campbell's suicide risk escalated to "a substantial risk of serious harm." *See Est. of Ford*, 301 F.3d at 1051 (emphasis omitted).

[4] The dissent points out that the district court relied on *Clouthier* alone in concluding that the law was clearly established as to all defendants. Because we review de novo and because *Conn*, 591 F.3d at 1102, and *Clouthier*, 591 F.3d at 1245, clearly established the law as to all defendants, remand for further consideration of whether Herrera is entitled to qualified immunity is not necessary.

24-3296

Finally, *Taylor v. Barkes*, 575 U.S. 822 (2015), does not govern here.  There, the Court found no clearly established right to "proper implementation of adequate suicide screening protocols" by an institution.  *Id*. at 823-24, 826-27.  By contrast, Campbell does not claim that CDCR's suicide prevention procedures were inadequate or improperly supervised; his grievance is that the individual medical professionals who treated him did not follow them.  *See id*. at 824, 827.

**AFFIRMED.**

*Campbell v. Herrera et al.*, Case No. 24-3296

LEE, Circuit Judge, dissenting in part:

Senarble Campbell was upset about being transferred from Corcoran State Prison to California State Prison, Sacramento (CSP-Sac). Although Campbell knew that CSP-Sac was the only California Department of Corrections and Rehabilitation (CDCR) facility that could support his elevated mental health care needs, he found it too far from his family. Campbell thus began a practice of "boarding up"—*i.e.*, papering over the windows in his cell so that guards could not see inside of it—"with the goal of forcing prison guards to come in violently."

Campbell boarded up and was extracted from his cell by correctional officers at CSP-Sac at least three times in June 2015. After each cell extraction, Campbell was evaluated by at least one mental health care provider for his level of suicide risk, in addition to the regular mental health evaluations he received. These evaluations—and the level of treatment they triggered—are the primary issue on appeal: Campbell claims that the providers improperly discounted his acute suicide risk level, while the providers argue that Campbell received adequate care. Campbell was eventually transferred back to Corcoran State Prison in October 2015.

I agree with the majority that defendant Becerra was deliberately indifferent to Campbell's acute suicide risk, and that Becerra's failure to provide greater mental health care violated a clearly established right. But for Martin, Kenton, and Herrera,

1

I do not believe that clearly established law put them on notice that Campbell faced a "*substantial* risk *of serious* harm." *Est. of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1051 (9th Cir. 2002). I would thus reverse the district court's denial of qualified immunity for these three defendants. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1248 (9th Cir. 2010).

* * *

The majority correctly notes that "whether a right is clearly established" for Eighth Amendment qualified immunity purposes is set forth in *Estate of Ford*, 301 F.3d at 1050. If "it would not be clear to a reasonable prison official when the risk of harm . . . changes from being *a* risk of *some* harm to a *substantial* risk of *serious* harm," then the law is not clearly established. *Id.* at 1051. The question here, then, is "'at what point a risk of inmate [suicide] becomes sufficiently substantial for Eighth Amendment purposes.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 n.3 (1994)).

Becerra violated a clearly established right under this test. As Campbell's primary mental health care provider, Becerra's notes suggest that he ignored clearly established signs of suicide risk, dismissed Campbell's statements that he was suicidal, and made clinically inappropriate and irrelevant notes. Our cases are clear that a mental health clinician may not provide medically inadequate care in the presence of these factors. *See Conn v. City of Reno*, 591 F.3d 1081, 1097–98 (9th

2

Cir. 2010); *Clouthier*, 591 F.3d at 1244–45.

The story is different, however, for Martin and Kenton. Each of the contract psychologists evaluated Campbell in a one-off triage setting. Each observed that Campbell presented as "stable" and was not in an "imminent [] risk" of harming himself. Campbell argues that Martin and Kenton primarily erred by discounting his stated suicidal ideation, which he argues should have placed him in the "'high acute' risk zone for suicide." The "'specific context'" of Campbell's suicidal ideation, however, looks nothing like what we have considered in prior inmate suicide cases. *See Est. of Ford*, 301 F.3d at 1050 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Campbell claims that he told Martin and Kenton that he tried to commit "suicide by extraction" and remained suicidal. Even accepting this as true, by Campbell's own account, his intended suicide method was only by boarding up his cell and forcing extractions. But "[c]ell extractions [] are frequent events" in which prisoners protest and signal their displeasure about a particular prison policy or treatment. *See Bell v. Williams*, 108 F.4th 809, 825 (9th Cir. 2024). Indeed, Campbell himself has been extracted nearly 50 times while incarcerated. Correctional departments typically require using the lowest level of force needed in an extraction—only enough to overcome an inmate's resistance. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 784 (9th Cir. 2018); *cf. Covington v. Fairman*,

123 F. App'x 738, 740 (9th Cir. 2004) (unpublished). That is why Martin explained to Campbell that "nobody is going to kill you" during a nonviolent cell extraction, and why Martin and Kenton had reasonable bases for discounting Campbell's suicide threats. In short, Campbell presented to the providers with "*a* risk of *some* harm" rather than a "*substantial* risk of *serious* harm." *Est of Ford*, 301 F.3d at 1051.[1]

I would thus reverse the district court's denial of qualified immunity to Martin and Kenton and remand for further analysis. Both providers appear to be contract psychologists rather than CDCR employees. We have not considered whether independent contractors are entitled to qualified immunity under *Filarsky v. Delia*, 566 U.S. 377 (2012). At first glance, Martin and Kenton seem to resemble "the typical case of an individual hired by the government to assist in carrying out its work," *id.* at 393, but this would be for the district court to determine in the first instance.

As for Herrera, the district court failed to "determin[e] whether the law was

---

[1] Martin and Kenton encountered none of the signs that made the suicide risk "so obvious" as in *Conn*, 591 F.3d at 1097. They also had no motive to misreport or downplay Campbell's risk level. *See id.* at 1097–98. Rather, Martin and Kenton faced similar situations to the *Clouthier* officers whom we held *were* entitled to qualified immunity: even though they observed signs and past reports of potential suicide risk, they did not violate any clearly established right in providing the level of care they found appropriate because the signs were not credible. *See* 591 F.3d at 1246–48 ("[I]n the absence of evidence that [they] knew [Campbell] was in substantial danger, it cannot be said that [they] acted with deliberate indifference.").

clearly established . . . in light of the specific context of the case." *Est. of Ford*, 301 F.3d at 1050 (citation omitted). The district court adopted *Clouthier*'s holding that Herrera "could not have thought it was lawful to remove key suicide prevention measures put in place by a prior Mental Health staff member when treating a mentally ill prisoner." *Campbell v. Tanton*, 2024 WL 1722416, at *9 (E.D. Cal. Apr. 22, 2024) (cleaned up). But unlike the other defendants, Herrera did not remove any suicide prevention measures. He just provided medicine. I would thus remand for the district court to consider whether Herrera is entitled to qualified immunity.

I thus respectfully dissent in part.