**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROBERT WILK,
              *Plaintiff-Appellant*,

v.

DWIGHT NEVEN, Warden; CARY
LEAVITT; J. NASH,
              *Defendants-Appellees.*

No. 17-17355

D.C. No.
2:15-cv-01429-
JCM-CWH

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted November 15, 2019
San Francisco, California

Filed April 23, 2020

Before:  Kim McLane Wardlaw, William A. Fletcher,
and Richard Linn,[*] Circuit Judges.

Opinion by Judge W. Fletcher

---

[*] The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

## SUMMARY**

### Civil Rights

The panel reversed the district court's summary judgment in favor of prison officials in an action brought pursuant to 42 U.S.C. § 1983 alleging that defendants violated plaintiff's right to be free from cruel and unusual punishment when they failed to protect him from an attack by another inmate.

Plaintiff alleged that the prison warden, an associate warden and a caseworker participated in a full classification meeting to discuss plaintiff's housing assignment after plaintiff reported that an inmate had threatened to attack and kill him. Plaintiff alleged that after the meeting, despite knowing about the risk to plaintiff, defendants failed to respond reasonably to protect plaintiff.

The panel held that taking plaintiff's evidence as true and viewing it in the light most favorable to him, defendants violated plaintiff's Eighth Amendment right to be protected from serious harm while incarcerated. The panel held that a reasonable fact-finder would be able to conclude that defendants were subjectively aware of the substantial risk of serious harm to plaintiff, and failed to respond reasonably.

The panel held that any reasonable prison official in the defendants' position would know that the actions defendants took, and failed to take, violated the Eighth Amendment. None of the defendants could claim ignorance to a prisoner's

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

right to be protected from violence at the hands of other inmates. That right has been clearly established since the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

The panel held that throughout proceedings in the district court, while he was still incarcerated, plaintiff struggled to obtain discovery from defendants, who resisted turning over crucial documents such as his institutional file and their records of housing classification meetings. On remand, the panel instructed that plaintiff should have another opportunity to seek the materials he requested previously, which had the potential to identify or exclude the defendants. To assist with this process, the panel encouraged the district court to appoint counsel.

## COUNSEL

Matthew V.H. Noller (argued), King & Spalding LLP, Sacramento, California, for Plaintiff-Appellant.

Frank A. Toddre II (argued), Senior Deputy Attorney General; D. Randall Gilmer, Chief Deputy Attorney General; Aaron D. Ford, Attorney General; Office of the Attorney General, Las Vegas, Nevada; for Defendants-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

On February 11, 2014, Robert Wilk was brutally assaulted by another inmate in a Nevada state prison. Alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment, Wilk brought suit against defendants Dwight Neven, the prison warden; Jennifer Nash, an associate warden; and Cary Leavitt, a caseworker. The district court granted summary judgment to defendants. We reverse.

### I. Factual and Procedural Background

Because this case is before us on a grant of summary judgment, we view the evidence in the light most favorable to Wilk, the non-moving party. *See, e.g.*, *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017).

At all times relevant to this suit, Units 7 and 8 at Nevada's High Desert State Prison ("HDSP") were protective units, where inmates were housed for their own safety. The units were located directly across from one another and shared a common yard. Inmates in Unit 7 were on a different schedule from inmates in Unit 8, limiting opportunities for contact between the two groups. However, opportunities for contact existed, for example, when inmates from the two units waited in the yard to go to classes or traveled through the yard on their way to medical appointments.

In October 2013, both Robert Wilk and Ysaquirle Nunley were housed in Unit 7. On or about October 20, Nunley threatened to attack and kill Wilk.

Wilk immediately reported the threat to his unit floor officer and was moved from Unit 7 to administrative segregation for his protection. Several days later, on October 29, Wilk participated in a full classification committee meeting to discuss his housing assignment. According to Wilk, defendants Leavitt, Nash, and Neven all attended the classification meeting, either in person or through a representative. Leavitt admits that he was at the meeting. Nash and Neven contend that they were not at the meeting.

At the classification meeting, Wilk filled out documentation outlining his need for protection and requesting that Nunley be placed on his administrative "enemy list," which would warn prison staff that Nunley posed a threat to him. Under normal prison procedures, such documentation would be submitted for review by the warden or his designee.

On October 30, Wilk was moved to Unit 8. He agreed to the move only because he believed Nunley had been removed from Unit 7 and had been placed on his enemy list. In fact, Nunley had been returned to Unit 7 and had not been put on Wilk's enemy list. During another classification meeting in November, defendants incorrectly told Wilk that Nunley "was still in [disciplinary segregation]."

On February 11, 2014, Nunley attacked Wilk in the yard between Units 7 and 8. The district court wrote, "Nunley allegedly exited his cell without authorization and attacked Wilk with stones, gravel, and his fists." "Wilk suffered extreme physical, emotional, and mental pain," including a broken nose and damaged eyes. According to Wilk, Nunley had been "released . . . from his cell for a medical appointment." In their brief, defendants concede that

"Nunley broke [away] from his unit" while being transferred by correctional officers. On the day of the incident, but after the attack, defendant Nash updated Wilk's enemy list to include Nunley.

Wilk alleges that Leavitt, Nash, and Neven each violated his Eighth Amendment right by failing to protect him from Nunley. Specifically, Wilk contends that defendants knew from the classification meeting about the risk Nunley posed to Wilk and failed to respond reasonably when they placed Wilk and Nunley back in Units 7 and 8, misled Wilk by telling him Nunley was still in administrative segregation, and failed to update Wilk's enemy list.

Defendant Leavitt concedes that he attended the classification meeting, was involved in the decision to move Wilk back to Unit 8, and knew that Nunley, housed in Unit 7, could potentially have some interaction with the individuals housed in Unit 8. However, Leavitt argues that he cannot be liable because he took reasonable action to protect Wilk and, after Wilk was moved to Unit 8, did not perceive an excessive or intolerable risk of serious injury to Wilk. Leavitt does admit that he might have made "a clerical mistake regarding assigning Nunley to the enemy list," but claims it was not his job to update the prison's records system.

Defendants Nash and Neven contend they did not attend the October 29 classification meeting and were not aware of the threat Nunley posed to Wilk. However, they acknowledge that individuals housed in Unit 7 could potentially have contact with individuals housed in Unit 8.

Wilk exhausted his administrative remedies and filed suit in state court under 42 U.S.C. § 1983. Defendants removed

the action to federal court. Throughout the proceedings in state and federal court, Wilk was *pro se*. The district court acknowledged its obligation to construe liberally Wilk's *pro se* filings. Wilk's complaint failed initial screening, but the district court allowed an amended complaint to go forward.

The district court granted defendants' motion for summary judgment. The court held that defendants were entitled to qualified immunity because Wilk's evidence, even if true, did not establish an Eighth Amendment violation. The court concluded that there was no violation by defendants Neven and Nash because they had no subjective knowledge of the risk Nunley posed to Wilk. The court concluded, further, that there was no violation by Leavitt because Wilk had not shown "Leavitt was aware of an excessive or intolerable risk to Wilk's health or safety," and because Leavitt responded reasonably to any risk he did perceive.

Wilk timely appealed.

## II. Standard of Review

We review *de novo* a district court's grant of summary judgment. *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014). "Summary judgment is appropriate when, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). "[C]ourts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### III.  Discussion

The Eighth Amendment requires prison officials to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Id.* at 834.  Specifically, a prison official violates an inmate's Eighth Amendment right only if that official is "deliberately indifferent"—in other words, if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably.  *Id.* at 837, 844–45.  A fact-finder may infer subjective awareness from circumstantial evidence.  *Id.* at 842.

We have applied *Farmer* on several occasions.  In *Lemire v. California Department of Corrections and Rehabilitation*, 726 F.3d 1062, 1068 (9th Cir. 2013), relatives of a prisoner brought suit under the Eighth Amendment after the prisoner committed suicide.  According to the plaintiffs' evidence, the decedent was able to commit suicide only because prison officials left the decedent's unit, a specialized housing unit for individuals on psychotropic medications, completely unsupervised for three-and-a-half hours.  *Id.* at 1070–71.  Under prison policy, prison officials were required to conduct regular security inspections designed to prevent inmate suicide, and such inspections could have prevented the decedent's death.  *Id.* at 1070.  We held that if the plaintiffs' evidence was true, defendants violated the Eighth Amendment.  *Id.* at 1085–86.

In *Clem v. Lomeli*, 566 F.3d 1177, 1180 (9th Cir. 2009), the plaintiff's cellmate became drunk and threatened him.

The plaintiff immediately informed a prison official, who did nothing. *Id*. The cellmate then attacked the plaintiff. *Id.* The jury found for the defendant, but we reversed based on erroneous jury instructions: "There was evidence showing that [the officer] heard Clem's call for help immediately prior to his beating, and that the officer took no steps to abate any risk to Clem. Clem was therefore entitled to a 'failure to act' instruction, and the district court erred in rejecting it." *Id.* at 1182 (noting that Eighth Amendment violations can occur when a prison official acts but also when a prison official fails to act). We held that doing nothing in response to Clem's pleas for help would have been unreasonable, amounting to "deliberate indifference." *Id.*

In *Cortez v. Skol*, 776 F.3d 1046, 1049 (9th Cir. 2015), a prison official attempted to transport three high-security inmates through a back-alley passage in the prison called "no man's land" that was impossible to see on security cameras. Prior to the escort, the official knew that there was hostility among the three men and that, due to his protective custody status, one of them, Cortez, was potentially in danger. *Id.* The official nonetheless escorted the three men, who were not wearing leg irons, by himself. *Id.* The other two men attacked Cortez, "kick[ing] and stomp[ing] on the back of his head." *Id.* During the attack, the officer was unable to stop the men with verbal commands or pepper spray. *Id.* "Cortez suffered a brain injury that caused severe, permanent mental impairment." *Id.* We reversed the district court's grant of summary judgment to the defendant, holding that the officer showed "deliberate indifference" by transporting the three men without backup when he knew physical violence was possible. *Id.* at 1053.

In addition to considering whether a constitutional violation is alleged, we ask whether the applicable law was "clearly established" at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Officials are subject to suit only for actions that they knew or should have known violated the law. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Law is "clearly established" for the purposes of qualified immunity if "every reasonable official would have understood that what he is doing violates th[e] right" at issue. *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (per curiam) (quotation marks omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances"—i.e., even without a prior case that had "fundamentally similar" or "materially similar" facts. *Hope*, 536 U.S. at 741.

We have recently addressed clearly established Eighth Amendment law with respect to failure-to-protect claims. "The Supreme Court need not catalogue every way in which one inmate can harm another for us to conclude that a reasonable official would understand that his actions violated [the Eighth Amendment]." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (applying Eighth Amendment standards to a pretrial detainee's case because, under *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), pretrial detainees are entitled to at least as much protection as post-conviction inmates). Once an official is subjectively aware of a substantial risk of serious harm, "clearly established" law requires "only that the [official] take reasonable measures to mitigate the substantial risk." *Id*.

We first evaluate whether defendants were aware that there was a substantial risk of serious harm to Wilk. Nunley's threat to Wilk meant that there was substantial risk

that he would attack Wilk and cause him serious harm. *See Cortez*, 776 F.3d at 1049–51; *Clem*, 566 F.3d at 1182. Defendant Leavitt admits that he was present at the initial classification meeting, which specifically focused on the threat posed by Nunley. Leavitt contends, however, that after Nunley was returned to Unit 7 and Wilk to Unit 8, Leavitt was correct in perceiving that Nunley no longer posed a substantial risk of serious harm. Leavitt's contention is inconsistent with Wilk's evidence. Wilk's relocation to Unit 8, which Leavitt concedes allowed contact with Unit 7, occurred shortly after Nunley's threat. At that time, nothing about Wilk's circumstances had changed. There was no reason to believe that Nunley no longer wished to attack Wilk, and Leavitt knew that Units 7 and 8 shared the same yard. A reasonable juror could find that Leavitt was subjectively aware of the substantial risk of serious harm to Wilk.

Defendant Nash does not admit that she attended the initial classification meeting, but because this case is before us on summary judgment, we take as true the facts as stated by Wilk. According to Wilk, Nash was present at the meeting, either in person or through a representative. The sole purpose of that meeting was for Wilk to report Nunley's threat and to express his fear of Nunley. Viewing the facts in the light most favorable to Wilk, a reasonable jury could conclude that Nash was either present at the meeting or received a report from the meeting, and that she was therefore subjectively aware of the risk Nunley posed to Wilk.

Defendant Neven also disputes that he attended Wilk's classification meeting. However, according to Wilk, Neven was present at the meeting, either in person or through a representative. Again, because the sole purpose of that

meeting was for Wilk to express his fear and report Nunley's threat, a reasonable jury could conclude that Neven knew what happened at the meeting. Moreover, Neven supervised the processing of requests to add someone to an inmate's enemy list. According to defendants' own evidence, caseworkers could not, on their own, add individuals to an enemy list. The warden or his designee was required to review and approve such requests. Wilk submitted the request to add Nunley to his enemies list on October 29, 2013, and the attack did not occur until February 11, 2014, over three months later. Construing the evidence in the light most favorable to Wilk, we hold that a reasonable fact-finder could conclude that Warden Neven was personally aware of the risk posed by Nunley because of his role in supervising the enemy list revision process.

We next evaluate whether defendants responded reasonably to the known substantial risk that Nunley posed to Wilk.

Taking Wilk's evidence as true and viewing it in the light most favorable to him, Leavitt's response was not reasonable. Leavitt knew that inmates in Unit 7 and Unit 8 sometimes interacted. He nonetheless placed Wilk in Unit 8, knowing that Nunley was in Unit 7 and would have an opportunity to attack Wilk. Further, a reasonable jury could find that Leavitt was responsible for submitting Wilk's request to add Nunley to his enemy list and that he failed to do so. Leavitt has never stated that he processed Wilk's form. He stated only that it is his usual custom to process the forms, and that he could have made a mistake. Because Nunley was not on Wilk's enemy list, other prison officials had no way of knowing that Wilk needed protection from Nunley. Still further, Leavitt actively misled Wilk by telling him that Nunley remained in

disciplinary segregation when instead he had been moved to Unit 7. Not only did Leavitt fail to protect Wilk and undercut the ability of other officers to protect Wilk, but he also reduced Wilk's own ability to protect himself.

According to Wilk's evidence, Nash either attended or sent a representative to the October meeting that determined where Wilk would be housed. Thus, a reasonable jury could find that Nash either participated firsthand in the dangerous housing assignment or knew about the assignment and did nothing to alleviate the risk. *See Clem*, 566 F.3d at 1182 (noting that an official's failure to act can constitute an Eighth Amendment violation). Like Leavitt, Nash misled Wilk by telling him that Nunley remained in disciplinary segregation. Further, a reasonable jury could conclude that Nash was at least partially responsible for the failure to update Wilk's enemy list because she acted immediately after the attack to update the list, which suggests that she had the authority to update the list all along.

Viewing the evidence in the light most favorable to Wilk, Neven also either attended the October housing meeting or sent a representative. Like Leavitt and Nash, he misled Wilk by telling him that Nunley had not been moved to Unit 7. Further, because Neven oversaw the process of updating inmates' enemy lists, a jury could find that Neven had the power to process Wilk's request but failed to do so.

Any reasonable prison official in the defendants' position would know that the actions defendants took, and failed to take, violated the Eighth Amendment. None of the defendants can claim ignorance to a prisoner's right to be protected from violence at the hands of other inmates. That right has been clearly established since the Supreme Court's

decision in *Farmer v. Brennan* in 1994. *See* 511 U.S. at 833; *Castro*, 833 F.3d at 1067. We have recently and explicitly held that it is clearly established that prison officials must "take reasonable measures to mitigate the [known] substantial risk[s]" to a prisoner. *Castro*, 833 F.3d at 1067. Wilk's case does not involve the sort of "novel factual circumstances" contemplated by *Hope*. 536 U.S. at 741. Rather, the facts are "materially similar" to previous cases. *Id*.

We note that throughout proceedings in the district court, while he was still incarcerated, Wilk struggled to obtain discovery from defendants, who resisted turning over crucial documents such as his institutional file and their records of housing classification meetings. On remand, Wilk should have another opportunity to seek the materials he requested previously, which have the potential to identify or exclude the defendants. To assist with this process, we encourage the district court to appoint him counsel. *See Jones v. Blanas*, 393 F.3d 918, 936–37 (9th Cir. 2004).

Conclusion

Taking Wilk's evidence as true and viewing it in the light most favorable to him, we hold that defendants violated his Eighth Amendment right to be protected from serious harm while incarcerated. We remand to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**