NOT FOR PUBLICATION

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| GLENN ELLIOTT LEONARD, | No. 21-35471 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-00893-AC |
| v. | |
| COLLETTE PETERS, Director of the Oregon Department of Corrections; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted November 9, 2022
Pasadena, California

Before: MURGUIA, Chief Judge, and PARKER** and LEE, Circuit Judges.
Partial Dissent by Judge LEE.

Plaintiff-Appellant Glenn Elliot Leonard, who was incarcerated at Two

Rivers Correctional Institution ("Two Rivers"), brought 42 U.S.C. § 1983 claims

against several Two Rivers officials (the "Defendants"). The district court adopted

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Barrington D. Parker, Jr., United States Circuit Judge
for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

the magistrate judge's recommendations and findings that Defendants Steve Bruce, Collette Peters, and Michael Gibson were not deliberately indifferent under the Eighth Amendment by failing to protect Leonard from an attack by another incarcerated person, and that Defendant David Pedro did not retaliate against Leonard in violation of the First Amendment for using the grievance system. In the alternative, the district court concluded that the Defendants were entitled to qualified immunity. The district court therefore granted the Defendants summary judgment on all claims. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

From late December 2017 through early February 2018, Leonard sent Inmate Communication Forms ("kytes") to Housing Sergeant Bruce and Peters, the Director of the Oregon Department of Corrections, asking to be transferred to a different unit because gang members were threatening and harassing him. In early February 2017, Harley Crump, another incarcerated person, attempted to assault Leonard.[1] Two Rivers officials disciplined Crump, but a week later, upon release

---

[1] The district court adopted the magistrate judge's finding that "Crump's actions on February 4, 2017, *could be viewed* as *merely* an attempt to scare or threaten Leonard . . . ." At summary judgment, however, the court does not ask whether facts "could be viewed" to favor the moving party. *See Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). Here, viewing the facts in the light most favorable to Leonard as the non-moving party indicates that Crump attempted to assault Leonard: Crump "dart[ed] around [a] table," and "aggressively walk[ed] towards" Leonard's cell, "intend[ing] . . . to 'beat [Leonard] down.'" Crump's "advance was stopped only due the cell door being closed." Two River officials' viewed

2

from segregated housing, Crump knocked Leonard down during dinner and repeatedly punched him in the head. Gibson, a Two Rivers official, intervened within ten seconds.

1. This court reviews a district court's grant of summary judgment de novo. *Longoria v. Pinal Cty.*, 873 F.3d 699, 703–04 (9th Cir. 2017). In so doing, this court "accept[s] the facts in the light most favorable to the [nonmoving party]." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1036 (9th Cir. 2000).

2. On appeal, Leonard argues that the district court erred on the merits of First and Eighth Amendment claims. In his opening brief, however, Leonard does not argue that the district court erred in concluding that the Defendants were entitled to qualified immunity, even though he must do so to prevail on appeal. Although this court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief," there are exceptions to the general rule, *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) (quotation omitted), and it is "well-established that a party can waive waiver implicitly by failing to assert it" and instead "addressing the claim on the merits," *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) (cleaned up). For their part, the Defendants do not argue that Leonard waived the issue of qualified

Crump's actions as "aggressive," "threatening," and "hostile"; noted that "[p]ast experience has shown that attempts like" Crump's "are done to . . . assault other inmates"; and found that Crump posed a "safety" and "security" risk.

3

immunity; rather, the Defendants, in their briefing and at oral argument, contend that the district court properly granted qualified immunity.

Regarding Leonard's Eighth Amendment claims, the Defendants have waived waiver, because they do not assert waiver and instead argue the merits of the claim and their qualified immunity defense. *See United States v. Scott*, 705 F.3d 410, 415 (9th Cir. 2012) ("A party who fails to assert a waiver argument forfeits—and therefore implicitly waives—that argument."). But unlike the Eighth Amendment claim, the Defendants make no substantive discussion about qualified immunity as to the First Amendment claim other than broadly asserting that all the Defendants are entitled to it. Because we do not have the benefit of the Defendants' briefing on the issue, it would be prejudicial to the Defendants for this court to consider whether Pedro is entitled to qualified immunity. *See Ullah*, 976 F.2d at 514 (recognizing that this court "may review an issue if the failure to raise the issue properly did not prejudice the defense of the opposing party"). We therefore affirm the district court's decision granting Pedro summary judgment on the First Amendment claim.

3.      Turning to the merits of Leonard's remaining constitutional claims, the Eighth Amendment imposes a duty on prison officials "to protect [incarcerated people] from violence at the hands of other [incarcerated persons]." *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 832

4

(1994)).  A prison official violates that duty when: (1) the official's act or omission, objectively viewed, caused "a substantial risk of serious harm"; and (2) the official was subjectively aware of that risk and acted with "deliberate indifference to [an incarcerated person's] health or safety."  *Farmer*, 511 U.S. at 834, 839–40 (quotation omitted).  The Defendants do not dispute that failing to move Leonard to different housing caused a substantial risk of serious harm; they argue only that Bruce, Peters, and Gibson were not deliberately indifferent.  The deliberate indifference standard "does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault," however the official "must have more than a mere suspicion that an attack will occur."  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (quotation omitted).  Deliberate indifference may be established through an "inference from circumstantial evidence" or "from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842.

A reasonable jury could conclude that Leonard's kytes to Bruce and Peters created more than a "mere suspicion" that another incarcerated person would attack Leonard.  Leonard sent Bruce multiple kytes asking to be transferred to a different unit, explaining that he was "under direct threat of [being] physical[ly] assault[ed]" by gang members and informing Bruce that gang members threatened

5

that they would "shank" him, have his "punk ass beaten down," and "drop" him "[w]hen [he] least expect[ed] it," and that "the pigs won't get out here in time to save [his] ass." When Bruce did not respond to his warnings, Leonard sent a kyte to Peters explaining the "dangerous situation." Even though Leonard did not specify exactly who might attack him or exactly when the attack would occur, "[i]t does not matter whether the risk came from a particular source . . . ." *Farmer*, 511 U.S. at 826. In sum, Leonard warned Bruce and Peters of a potential attack by repeatedly detailing threats, incidents of harassment, and "faux" swings. *See Berg*, 794 F.2d at 459 (concluding that a guard was deliberately indifferent when the guard "ignored [a] plea" from an incarcerated person that his life was in danger).

Regardless, even if the Defendants are correct that the kytes were not specific enough to put Bruce or Petters on notice, Crump's attempted assault,[2] coupled with Leonard's warnings, are sufficient circumstantial evidence for a jury to conclude that Bruce and Peters were subjectively aware of a serious threat to Leonard. Two Rivers officials found that Crump's "aggressive and threatening" actions were likely "done to either scare off or assault . . . inmates [who] are not welcome [i]n a unit," and that Crump's "hostile" actions "create[d] a threat to the safety, security or orderly operation of the facility." Leonard informed Peters that

---

[2] Even if the magistrate judge and district judge are correct that Crump only meant to "threaten Leonard," a threat can be sufficient under the deliberate indifference standard. *See Wilk v. Neven*, 956 F.3d 1143, 1149 (9th Cir. 2020).

6

Crump's "intent was to 'beat [him] down'" to "follow through" with earlier threats. After officials disciplined Crump by placing him in segregated housing for a week, the threats only *escalated*, and Leonard asked Bruce to be moved "before it is too late," and warned Peters that was "only a matter of time" before he was hurt. Bruce and Peters ignored these warnings. At summary judgment, Leonard's evidence of an attempted assault and escalating threats despite disciplining the aggressor are sufficient to establish a genuine dispute of material fact whether Bruce and Peters were deliberately indifferent, because they "ha[d] more than a mere suspicion that an attack w[ould] occur." *Berg*, 794 F.2d at 459. *See Wilk v. Neven*, F.3d 1143, 1149 (9th Cir. 2020) (officials were deliberately indifferent because the aggressor's single "threat to [the plaintiff] meant that there was substantial risk that [the aggressor] would attack [the plaintiff] and cause him serious harm" and a ten day separation was insufficient to mitigate the risk of future harm); *Cortez*, 776 F.3d at 1052 (concluding that a guard was deliberately indifferent when the guard "knew about the hostility" among three incarcerated persons but decided to transport the three together without restraint, at which time they started fighting); *Hearns v. Terhune*, 413 F.3d 1036, 1040–41 (9th Cir. 2005) (prior warnings and pervasive violence sufficient notice).

4.     To prevail on his Eighth Amendment claims, Leonard must also show that Bruce and Peters are not entitled to qualified immunity by demonstrating that

the right to be free from violence from other inmates was "clearly established" at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In the context of the Eighth Amendment, the Supreme Court has clearly established that the "contours" of an incarcerated person's right "to be free from violence at the hands of other inmates" is "sufficiently clear" to put reasonable officials on notice. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc) (cleaned up; citing *Farmer*, 511 U.S. at 833). Therefore, "[o]nce" Bruce and Peters were "subjectively aware of a substantial risk of serious harm, 'clearly established' law requires 'only that [Bruce and Peters] take reasonable measures to mitigate the substantial risk.'" *Wilk*, 956 F.3d at 1148–49 (quoting *Castro*, 833 F.3d at 1067).

Bruce and Peters are not entitled to qualified immunity. Placing Crump back in contact with Leonard after only seven days of separation is not reasonable mitigation where threats from other gang members "increased" despite Crump's discipline. *See Farmer*, 511 U.S. at 844 ("[I]t would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom."). And even if disciplining Crump for seven days was a reasonable initial response, Leonard warned Bruce and Peters that Crump's discipline was ineffective as the threats escalated and that it was only a matter of time before he was hurt. Based on this added information, Bruce and Peters did not reevaluate

8

whether Crump should be allowed to come in contact with Leonard and they took no measures to protect Leonard from these additional threats. Accordingly, they did not take reasonable measures to mitigate the threat of harm. *Castro*, 833 F.3d at 1067.[3]

5. Next, the parties dispute whether Gibson is entitled to qualified immunity. Leonard argues that Gibson unreasonably delayed responding to Crump's attack during dinner. The security footage shows Gibson intervening about ten seconds after Crump attacked Leonard, but it is unclear when Gibson realized there was fight. Even if the footage could be viewed to suggest that

---

[3] The dissent argues that Bruce and Peters are entitled to qualified immunity because the threats and harassments were vague and made by unidentified individuals. However, it is clearly established that officials need not be able to "guess beforehand precisely who would attack whom," *Farmer*, 511 U.S. at 844 and, even if Bruce and Peters did not exactly know who was continuing to threaten Leonard after Crump's attempted assault, Bruce and Peters "knew about the hostility between the inmates," *Cortez*, 776 F.3d at 1052 (concluding that "a reasonable jury could think" that an official was sufficiently aware of hostility simply from overhearing "a lot [of] talk and harassing words between the three inmates in the back cage"). The dissent's citation to *Hearns* is inapposite because *Hearns* did not concern a plaintiff's personal warnings to officials. 413 F.3d at 1039–41. Rather, in *Hearns*, the officials' deliberate indifference stemmed from their *general* awareness of "longstanding, pervasive, [and] well-documented" "differences between the prison's Muslim community over religious leadership and services" that culminated in a religious attack on plaintiff. *Id.* at 1041. This well-documented religious violence included officials' knowledge of "specific inmates who had orchestrated previous attacks on other inmates," including the plaintiff, "who did not support the ruling Muslim group." *Id.* *Hearns* therefore demonstrates that Crump's attempted assault was enough to put Bruce and Peters on notice of potential violence, not that Leonard needed to specify the exact people who would attack him.

Gibson was aware of the attack before he responded, Leonard does not cite any cases demonstrating that Gibson's delay was unreasonable or amounted to deliberate indifference. *Cf. Farmer*, 511 U.S. at 845 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable . . . ."). Because Leonard has not shown that Gibson failed to "take reasonable measures," Gibson is entitled to qualified immunity. *Castro*, 833 F.3d at 1067.

The district court's order granting summary judgment: (i) in favor of Defendants Steve Bruce and Collette Peters is **REVERSED** and **REMANDED**; (ii) in favor of Defendant Michael Gibson is **AFFIRMED**; and (iii) in favor of Defendant David Pedro is **AFFIRMED**.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.[4]

---

[4] Each party is to bear their own costs.

FILED

JAN 10 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Glenn Leonard suffered a beating from a fellow inmate, Harley Crump. Leonard blames prison officials Steve Bruce and Collette Peters (among others) for failing to prevent this assault and argues that they thus violated his Eighth Amendment right. The majority holds that a factual dispute exists on this issue. I respectfully dissent: While the assault was regrettable, I believe that Bruce and Peters are entitled to qualified immunity because there was no clearly established law showing that their conduct was deliberately indifferent towards Leonard.

Leonard alleges that Bruce and Peters were on notice that Crump would physically attack him because Leonard had submitted multiple messages stating that white gang members were threatening and harassing him. But none of the messages identified Crump—or anyone else for that matter. Unfortunately, threats and harassment are far too common in prisons teeming with hundreds of inmates, many of whom may be violent. And without more specific details of who may be threatening him, it seems questionable whether Bruce and Peters were on sufficient notice of a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). At the very least, it was not clearly established at the time that vague allegations of threat and harassment by unidentified individuals would put prison officials on notice of a "substantial risk of serious harm." *Cf. Hearns v. Terhune*, 413 F.3d 1036, 1039-41 (9th Cir. 2005) (holding that the plaintiff's complaint

adequately alleged that prison guards were deliberately indifferent because they knew of threats from "specific inmates who had orchestrated previous attacks").

Leonard also argues that prison officials should have been on notice of a "substantial risk of serious harm" by the time that Crump had tried to assault him on February 4. But prison officials immediately acted in response to that attempted assault: They disciplined Crump by taking away his privileges and segregating him for seven days before allowing him to return. The prison guards could have reasonably believed that this punishment would deter Crump from acting out on his earlier threats. Indeed, one of the cornerstones of our criminal justice system is that punishment (or the threat of it) can deter people from committing bad acts. In hindsight, the prison officials were unfortunately wrong, as Crump repeatedly punched Leonard shortly after his punitive confinement ended. But the prison officials' actions appear reasonable. And at the very least, there was no clearly established law holding that prison guards are deliberately indifferent if they rely on punishment to try to deter threatening inmates.[1]

I thus respectfully dissent in part.

---

[1] Our decision in *Wilk v. Neven*, 956 F.3d 1143 (9th Cir. 2020), can be distinguished because the prison officials there moved the complaining inmate to another unit before returning him to the same unit with the threatening inmate. *See id.* at 1146. In other words, the threatening inmate was never punished, and thus prison officials were on notice that the threatening inmate would likely act on his threats once the complaining inmate returned to the unit. *See id.* at 1149-50.