**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MUSSIE E. WELDEYOHANNES,

*Plaintiff - Appellant*,

v.

STATE OF WASHINGTON; JOHN
LEE, Sergeant, Washington
Corrections Center; OLSON-WARD,
Nurse, Washington Corrections
Center; STEPHEN VERES, AKA
Veres; UNKNOWN OFFICERS,
Correctional Officer, Washington
Corrections Center; KYLE
GONTHIER, WCC - Sgt; KEITH
MALONE, WCC - C/O; JEFFREY
HOWARD, WCC - C/O; JORDAN
BALETO, WCC - C/O; ADAM LEE,
WCC - C/O; WASHINGTON
CORRECTIONS CENTER,
Department of Corrections Agency,

*Defendants - Appellees*.

No. 24-3821

D.C. No.
3:23-cv-05526-
JCC-BAT

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted September 17, 2025
Seattle, Washington

Filed December 19, 2025

Before: William A. Fletcher, Ronald M. Gould, and Ana de
Alba, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

### Prisoner Civil Rights

The panel reversed the district court's summary judgment for prison officials based on qualified immunity, and remanded, in an action brought by a Washington state prisoner regarding a use of force incident that occurred during a scheduled transport between prison facilities.

Plaintiff has a documented history of medical accommodation, including the use of a wheelchair as a result of his mobility problems. During the transport, he was not provided with a wheelchair van or special transport vehicle that would accommodate his wheelchair. Instead, defendants used physical force to move him and allegedly dropped him and dragged him onto the floor of a regular bus, resulting in injuries. Plaintiff alleged violations of the Americans with Disabilities Act ("ADA") and

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Rehabilitation Act of 1973 ("RA") and brought claims under 42 U.S.C. § 1983 for deliberate indifference to a substantial risk of serious harm and the use of excessive force in violation of his Eighth Amendment rights.

The panel held that the district court erred in granting summary judgment in favor of the State on plaintiff's ADA and RA claims. There was conflicting evidence in the record regarding (1) whether plaintiff told prison officials that he could not walk up the steps of the normal transport bus and instead needed a wheelchair-accessible vehicle; (2) whether prison officials checked his transportation code; and (3) what officials saw on the day in question. These disputes over the extent of the prison officials' notice and investigation were sufficient for plaintiff's ADA and RA claims to survive a motion for summary judgment.

The panel held that material disputes of fact similarly precluded summary judgment in favor of prison officials on plaintiff's Eighth Amendment claims for deliberate indifference and excessive force. Because the district court's grant of qualified immunity was premised on a finding that the prison officials had not violated plaintiff's rights, and because factual disputes remained about the officials' conduct that could impact whether the unlawfulness was clearly established at the time, the panel reversed the district court's determinations of qualified immunity and remanded for further proceedings.

## COUNSEL

Athul K. Acharya (argued) and Sara K. Rosenburg, Public Accountability, Portland, Oregon, for Plaintiff-Appellant.

Sarah C. Brisbin (argued), Assistant Attorney General, Corrections Division; Nicholas W. Brown, Attorney General; Office of the Washington Attorney General, Olympia, Washington; Candie M. Dibble, Senior Counsel, Corrections Division, Office of the Washington Attorney General, Spokane, Washington; for Defendants-Appellees.

**OPINION**

GOULD, Circuit Judge:

Mussie Weldeyohannes ("Weldeyohannes"), an inmate in the custody of the Washington State Department of Corrections, brought a *pro se* civil rights action against the State of Washington and several prison officials regarding a use of force incident that occurred during a scheduled transport between prison facilities. Weldeyohannes alleged violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act of 1973 ("RA") and brought claims under 42 U.S.C. § 1983 for deliberate indifference to a substantial risk of serious harm and the use of excessive force in violation of his Eighth Amendment rights.

A magistrate judge issued a report and recommendation ("R&R") recommending that the district court deny the State and individual prison officials' request for summary judgment on all claims because of genuine disputes of material facts. The magistrate judge recommended denying qualified immunity for the individual prison officials for the same reasons. The district court declined to adopt these recommendations and instead granted summary judgment for the State and the prison officials, and concluded that

qualified immunity should be given to the individual officials.

Weldeyohannes appeals, contending that the district court erred when it resolved factual disputes in favor of the moving party on summary judgment. We have jurisdiction under 28 U.S.C. § 1291. Because we conclude that genuine disputes of material fact preclude summary judgment in favor of the State and prison officials, we reverse and remand the district court's grant of summary judgment.

## I.  FACTS AND PROCEDURAL HISTORY

### A

Weldeyohannes has a documented history of medical accommodations from the prison system as a result of his mobility problems. Dating back to at least 2017, Weldeyohannes has received Health Status Reports ("HSRs") from the prison that document his accommodations. At the time of the transfer, Weldeyohannes had active HSRs for "lower tier" housing and specialized gloves when using a walker or wheelchair without a pusher. His past HSRs reflected his need for lower tier or "no upper bunk" housing, a wheelchair and wheelchair pusher, specialized compression stockings, a cane, and a walker, and his requirement for taking the "shortest route" when moving him. Similarly, his HSRs issued after the transfer reflect his need for a wheelchair and wheelchair pusher, specialized shoes and socks, gloves for using a walker or wheelchair without a pusher, and an ADA-compliant cell.

In addition to HSRs, prison medical providers also assign inmates transportation codes ("T-codes") that reflect the accommodations needed for the transport of an inmate.

T-codes range from "1," which indicates that a medical provider believes an inmate can get themselves onto the regular transport bus without assistance, to "5," which indicates that an inmate requires a wheelchair van or other special transport vehicle. Only a medical provider can change the code for an inmate's transport. The prison here had issued Weldeyohannes a T-code of 5, meaning that he requires a wheelchair van or other special transport vehicle for all transports.

On February 15, 2023, Weldeyohannes was transferred from the Washington Corrections Center in Shelton, Washington, to the Washington State Penitentiary in Walla Walla, Washington. Weldeyohannes arrived at the loading area for the transport bus in his wheelchair. Upon his arrival, Weldeyohannes was not provided with a wheelchair van or special transport vehicle that would accommodate his wheelchair. Although many underlying facts of this incident are disputed by the parties, it is not disputed that on February 15, 2023, Weldeyohannes told at least one prison official involved in his transport that he was unable to board the regular transport bus and needed special transportation to accommodate his wheelchair. Weldeyohannes contends that he told many prison officials that he needed this accommodation. Surprisingly, in light of his presence in a wheelchair, the prison officials treated the incident as a refusal of transport, called in a crisis negotiator, and after negotiations failed, received authorization from a supervisor to use physical force to move Weldeyohannes onto the normal transport bus.

Again, the parties dispute the extent of force used and resulting injuries, but Weldeyohannes contends that he was dropped and dragged onto the floor of the bus and that, as a

result, he suffered an injured shoulder and post-traumatic stress, among other injuries.

An internal prison investigation after the incident revealed that Weldeyohannes in fact had a T-code of 5 on the day of the incident, but that this code was incorrectly entered into the prison records as a T-code of 1.

**B**

On May 1, 2024, a magistrate judge issued an R&R recommending denying the State's and prison officials' motion for summary judgment on all claims because the record was either unclear or conflicting on what T-code was in fact in place on February 15, 2023, what T-code was reflected in the prison's records and viewable to the prison officials at the time of the transfer, which officials checked the T-code, what steps they took to check it, whether any officials were aware that Weldeyohannes had a T-code of 5, and whether Weldeyohannes had voiced  a request for specialized transport.  The R&R further found that the record was unclear and that there was conflicting evidence on the extent of any injury and the need for physical force.[1]

The district court declined to adopt the magistrate judge's recommendations, concluding that the R&R was fundamentally flawed because it failed "to engage with the source of the alleged violation — [the State's] erroneous coding of [Weldeyohannes's] transportation status (T-5 vs. T-1), which the individual defendants then relied on."  The

---

[1] The R&R recommended finding qualified immunity for one official, Sergeant John Lee, who provided evidence that he spoke with medical personnel and relied on their statement that Weldeyohannes would have no issues with transport in a regular bus.  Thus, the R&R recommended granting summary judgment only as to John Lee on the claim of deliberate indifference under the Eighth Amendment.

district court concluded that although Weldeyohannes presented in a wheelchair, that did not mean Weldeyohannes was unable to self-ambulate for a short distance and the individual prison officials' conclusions to this effect did not amount to deliberate indifference. For this reason, the district court granted summary judgment in favor of the State on the ADA/RA claims, and in favor of the individual officials on the Eighth Amendment claim for deliberate indifference to a substantial risk of serious harm. As for the excessive force claim under the Eighth Amendment, the district court found that qualified immunity applied to the individual officials and granted summary judgment.

Weldeyohannes appeals, and we reverse and remand.

## II.  STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment and its determinations of qualified immunity. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). In doing so, we construe Weldeyohannes's *pro se* filings liberally. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("We have . . . held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."). We also construe all evidence in Weldeyohannes's favor. *Id.* at 1149.

## III.   DISCUSSION

## A.  THE ADA AND RA CLAIMS

The district court erred in granting summary judgment in favor of the State on Weldeyohannes's ADA and RA claims because the erroneous coding of Weldeyohannes's transportation status did not preclude a finding of deliberate indifference.

Under the ADA and RA, the "failure to provide reasonable accommodation can constitute discrimination."[2] *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). We have recognized that the need for reasonable accommodation applies to inmate transportation. *See Bell v. Williams*, 108 F.4th 809, 826 (9th Cir. 2024). After receiving a request for an accommodation, a public entity must "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). To receive money damages, Weldeyohannes must show that the officials acted with "deliberate indifference" to his need for accommodation. *Id.* at 1138.

Numerous genuine disputes of material fact preclude the district court's grant of summary judgment to the State. There is conflicting evidence in the record regarding whether Weldeyohannes told prison officials that he could not walk up the steps of the normal transport bus and instead needed a wheelchair-accessible vehicle, whether prison officials checked his transportation code, and what officials saw on the day in question. Ninth Circuit precedent supports our holding that these disputes over the extent of the prison officials' notice and investigation are sufficient for Weldeyohannes's ADA and RA claims to survive a motion for summary judgment. *See Updike v. Multnomah Cnty.*, 870 F.3d 939, 954 (9th Cir. 2017) ("A denial of a request without investigation is sufficient to survive summary judgment on the question of deliberate indifference."); *see*

---

[2] We analyze Weldeyohannes's ADA and RA claims together because they do not differ in any relevant way for this appeal, and because Title II of the ADA was modeled after § 504 of the RA. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135–36 (9th Cir. 2001).

*also Duvall*, 260 F.3d at 1140 ("[Plaintiff] provided sufficient evidence to create a triable issue as to whether [Defendants] . . . had notice of his need for the accommodation involved and that they failed despite repeated requests to take the necessary action."). In *Updike*, we reversed summary judgment on some of the plaintiff's ADA and RA claims because factual disputes existed as to the extent of Multnomah County's investigation into a needed accommodation. We held that a reasonable jury could find that the County's actions were more than mere "bureaucratic slippage." *Updike*, 870 F.3d at 954–57. Similarly, in *Duvall* we reversed summary judgment in favor of Kitsap County when, viewing the facts in the light most favorable to the plaintiff, we determined that genuine issues of material fact existed about the County's investigation into an accommodation. *Duvall*, 260 F.3d at 1139 ("When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious . . .), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test."). Here, too, as in *Duvall*, questions of fact exist about what records the prison officials checked, what those records showed, and any other steps the prison officials took to investigate Weldeyohannes's need for a special transport van to accommodate his wheelchair.

## B.  THE EIGHTH AMENDMENT CLAIMS

Material disputes of fact similarly preclude summary judgment in favor of the prison officials on Weldeyohannes's Eighth Amendment claims for deliberate

indifference and excessive force. [3]  To prove liability for deliberate indifference in this context, a plaintiff must meet an objective standard — that the plaintiff was subject to a "substantial risk of serious harm," — and a subjective standard — that a prison official subjectively knew of this substantial risk and yet failed to take "reasonable measures to abate it." *See Farmer v. Brennan*, 511 U.S. 825, 834, 845–47 (1994); *see also Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–76 (9th Cir. 2013) (an Eighth Amendment claim requires an objective showing of a serious deprivation and a subjective showing of deliberate

---

[3] Weldeyohannes's *pro se* amended complaint and his response to the State's motion for summary judgment frames his Eighth Amendment claims as based on both excessive force and "deliberate indifference to his serious medical needs."  The magistrate judge also framed one of his Eighth Amendment claims as "deliberate indifference to a serious medical need," though the district court frames it only as a "deliberate indifference" claim.  We recognize that Weldeyohannes is not arguing on appeal that the prison officials failed to provide him adequate medical care, as is typical in an Eighth Amendment claim based on disregard for an inmate's medical needs. *See, e.g.*, *Norsworthy v. Beard*, 87 F.Supp.3d 1164, 1185–90 (N.D. Cal. 2015) (bringing Eighth Amendment claim based on denial of medical care for gender dysphoria).  Instead, Weldeyohannes is asserting a theory of deliberate indifference to his safety or well-being because he alleges the prison officials knew of a substantial risk of serious harm, yet disregarded that risk and ultimately caused him harm. *See, e.g.*, *Wilk v. Neven*, 956 F.3d 1143, 1147–48 (9th Cir. 2020); *see also Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Because it is clear from the framing of the claim throughout the pleadings that Weldeyohannes was not alleging inadequate medical treatment, we do not hold Weldeyohannes's framing of his "serious medical need" to his detriment on appeal. *See, e.g.*, *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003) (when construing pleadings, we provide a *pro se* plaintiff the "benefit of any doubt") (internal quotation marks and citation omitted).

indifference); *Wilk v. Neven*, 956 F.3d 1143, 1147–48 (9th Cir. 2020).

At summary judgment, the following factual disputes must be resolved in Weldeyohannes's favor: First, that Weldeyohannes was sitting in a prison-issued wheelchair was plain and obvious to the prison officials involved in the transport. What was plain and obvious to their eyes and reinforced by Weldeyohannes's protests asking for special transport raises at least a factual question. Second, Weldeyohannes's presence in a prison-issued wheelchair also raised an issue of fact as to whether it was reasonable for the prison officials to believe that he could walk a few feet up the stairs of the regular transport bus. Third, Weldeyohannes's documented history of wheelchair use and his official medical accommodations at the prison similarly provide a triable issue of fact as to whether the prison officials knew of and ignored an obvious risk to Weldeyohannes when they used force to transport him, a wheel-chair bound individual, up the stairs to a regular transport bus.[4] *Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Whether this use of force was justified under the circumstances similarly turns on disputed facts that preclude summary judgment. *See Bearchild v. Cobban*, 947 F.3d

---

[4] We note that obtaining an accommodation for a prison-issued wheelchair or other medical equipment requires a showing of a disability and proving a need for an accommodation. *See* Wash. State Dep't of Corr., DOC 690.400, Individuals with Disabilities § IV (2022) (outlining the accommodation process). Therefore, we are not persuaded by the prison officials' mistaken belief that Weldeyohannes could "self-ambulate up a few steps," even though he arrived in a wheelchair and do not give that mistaken belief weight at summary judgment.

1130, 1141 (9th Cir. 2020) (listing factors for an Eighth Amendment excessive force claim).  Here, we have sharply conflicting evidence in the record.  Weldeyohannes, on the one hand, alleges that he was dragged and dropped onto the floor of the regular transport bus, while by contrast the prison officials say his body went limp, and the officials then employed *de minimis* force to lift him into the bus.  Only a trier of fact can determine which of these characterizations is closest to the truth; that cannot be determined conclusively on a summary judgment motion.[5]

## C.  QUALIFIED IMMUNITY

Qualified immunity protects government officials from liability for civil damages unless their conduct objectively violates clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 815–18 (1982).  In our Circuit, "[q]ualified immunity protects government officials from liability under

---

[5] The parties acknowledge that a video of the incident exists, as is required by the State's policies for pre-planned uses of force. Weldeyohannes requested the video recording in his complaint and again noted in his response to the State's motion for summary judgment that "no photos [of the incident] have been provided."  Interpreting Weldeyohannes's *pro se* pleadings liberally, we construe these statements as a request under Federal Rule of Civil Procedure 56(d) for further discovery prior to judgment. *See Thomas*, 611 F.3d at 1150 (declining to apply strict summary judgment rules to *pro se* inmates). The magistrate judge recognized the existence of this video, and said that it "could, potentially, be dispositive" to Weldeyohannes's excessive force claims.  But the district court did not mention the video recording in its grant of summary judgment in favor of the State and prison officials.  It was error for the district court to grant summary judgment without first addressing this implicit request for discovery concerning the video recording. *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) ("[S]ummary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim.").

§ 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (internal quotation marks and citation omitted). Because the district court's grant of qualified immunity was premised on a finding that the prison officials had not violated Weldeyohannes's rights, and because factual disputes remain about the officials' conduct that may impact whether the "unlawfulness . . . was clearly established at the time," we reverse and remand the determinations of qualified immunity.[6]   *Id.* (internal quotation marks and citation omitted).

## IV.   CONCLUSION

For the reasons stated herein, we reverse the district court's grant of summary judgment in favor of the State and the prison officials and its determination of qualified immunity and remand for further proceedings.

**REVERSED and REMANDED.**

---

[6] We recognize that not all prison officials in this lawsuit had the same level of involvement in the use of force incident.  We decline to decide in the first instance whether some individual officials may be entitled to qualified immunity based on the scope of their individual actions when the parties have not directly made this argument and the district court has not first decided this specific question.